**Adrian L. GRASS, Adrian L. Grass, Jr., Sharon Elizabeth Grass and Ramona Rebecca Lopez, Plaintiffs-Appellants,**

v.

**CREDITO MEXICANO, S.A., Defendant-Appellee.**

No. 85–1669.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1986.

Rehearing Denied Sept. 15, 1986.

11. *Hoover v. Livingston Bank,* 451 So.2d 3, 5 (La.App.1984); *Jackson v. East Baton Rouge*

Carl H. Green, Kurt G. Paxson, El Paso, Tex., for plaintiffs-appellants.

Philip R. Martinez, W. Royal Furgeson, El Paso, Tex., for defendant-appellee.

Before GEE, RANDALL and W. EUGENE DAVIS, Circuit Judges.

RANDALL, Circuit Judge:

Plaintiffs appeal from an order of the district court dismissing their complaint on the ground that the act of state doctrine bars consideration of plaintiffs' claims in a United States court. We affirm in part, reverse in part, and remand.

## I.

Plaintiff Adrian L. Grass is a citizen of the United States living in El Paso, Texas. Grass opened in 1976 a dollar account with the predecessor of defendant Credito Mexicano, S.A., a bank in Mexico. For the next six years, Grass invested more money in Credito Mexicano, usually in certificates of deposit. In August 1982, the Mexican government froze all foreign currency accounts in Mexico and ordered that interest be paid in pesos at the official rate (apparently about half the market rate), rather than in dollars as Grass and Credito Mexicano had agreed would be the case. When Grass was permitted access to the accounts in 1983, he received his principal amount in pesos, rather than in dollars, again at the official rather than market rate. This assertedly resulted in a principal loss to Grass of $210,262.96, plus lost interest.

This lawsuit followed. Plaintiffs' first amended complaint sets forth the following federal and state law causes of action: (1) sale of unregistered securities in contravention of 15 U.S.C. § 77e; (2) fraudulent misrepresentations and omissions in the sale of securities, 15 U.S.C. §§ 77e(2), 77q(a), 78j(b); 17 C.F.R. § 240.10–b5; (3) negligent misrepresentations; (4) breach of contract; (5) deceptive trade practices, Tex. Bus. & Comm.Code Ann. §§ 17.50(a), 17.-46(b); (6) conversion; and (7) breach of Mexican law.

## II.

After discovery was commenced and the motion to dismiss filed, this court decided *Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir.1985), which disposes of many of the issues raised. First, this action is not barred by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611, even though Credito Mexicano is now an instrumentality of the Mexican government. As did *Callejo*, this action arose as the result of Credito Mexicano's commercial banking activities with a direct effect

in the United States, *id.* at 1107; therefore, the district court has subject-matter jurisdiction to consider the claims under 28 U.S.C. §§ 1330(a), 1605(a)(2). *See also Sanchez v. Banco Central de Nicaragua,* 770 F.2d 1385, 1391 (5th Cir.1985).

■ However, the Mexican government's currency control decisions plainly are beyond inquiry by this court under the act of state doctrine: "We are barred under the act of state doctrine from inquiring into the validity of acts of foreign states performed in their own territory—including the validity of Mexico's exchange control regulations ..." *Callejo,* 764 F.2d at 1105. Any cause of action that is based directly on that decision is likewise barred. *Id.*

■ It is tempting to end our analysis here. Grass arguably would have suffered no injury had it not been for the Mexican government's actions. However, as we noted in *Callejo,* claims that are based on Credito Mexicano's failure to comply with the law at the time the certificates of deposit were issued, rather than on its later breach of the terms of the certificates due to its compliance with Mexico's exchange control regulations, are not barred by the act of state doctrine. *Id.* at 1125 n. 33. "Adjudicating these claims would not involve reviewing the validity of the exchange control regulations." *Id. See also Riedel v. Bancam, S.A.,* 792 F.2d 587 (6th Cir.1986) (permitting state securities law claim to proceed against Mexican bank because claim did not implicate currency control decision). However, these claims must state a cause of action as a matter of substantive law, based on the allegations of the complaint, in order to warrant reversal.

■ Therefore, we must separate the allegations of the complaint into two categories: those barred by the act of state doctrine and those not so barred. The breach of contract and conversion claims clearly call into question the validity of the Mexican government's regulations, as does the claim that the regulations are invalid under Mexican law. We cannot consider these three causes of action due to the act of state doctrine and the principles set forth in *Callejo.*

Four claims remain. Plaintiffs admit that Credito Mexicano is entitled to judgment as a matter of law on the two federal securities laws claims pursuant to the finding in *Callejo* that identical accounts "were not 'securities' within the meaning of the federal ... securities law." 764 F.2d at 1125 n. 33.

■ The claim of deception in violation of the Texas Deceptive Trade Practices Act ("DTPA") must fail because Grass is not a "consumer" by purchase or lease of goods or services, a prerequisite to bringing a DTPA claim, under the allegations of the complaint. *Kennedy v. Sale,* 689 S.W.2d 890, 892 (Tex.1985); Tex.Bus. & Comm. Code Ann. § 17.45(4) (Vernon Supp.1985). An "attempt to acquire money" is not an attempt to acquire goods or services as contemplated by the DTPA. The mere purchase of a certificate of deposit is not a purchase of goods or services for the purposes of the DTPA. *First State Bank, Morton v. Chesshir,* 613 S.W.2d 61, 62–63 (Tex.Civ.App.—Amarillo), *rev'd on other grounds,* 620 S.W.2d 101 (Tex.1981); *see Riverside National Bank v. Lewis,* 603 S.W.2d 169, 175 (Tex.1980). However, a purchase of services—such as financial counseling—in connection with a purchase of a certificate of deposit may provide a basis for DTPA liability. *First Federal Savings & Loan Association of San Antonio v. Ritenour,* 704 S.W.2d 895, 899 (Tex. Civ.App.—Corpus Christi 1986, writ ref'd n.r.e.). But in the case *sub judice,* there are no allegations in the complaint that might support a conclusion that Grass purchased any services whatever from Credito Mexicano when he purchased the certificates of deposit. *Compare id.* at 899 (bank provided plaintiff with advice, counseling, and "a broad range of services"). Rather, there is here alleged nothing more than a series of purely financial transactions. Accordingly, the DTPA count fails to state a cause of action.

■ Finally, we reach the negligent misrepresentation claim. The factual allega-

tions of the complaint relevant to this count, which we must assume to be true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), are as follows. Grass' investments were made at least sometimes in response to visits by agents of Credito Mexicano to Grass in El Paso. These agents told Grass that the investments in Credito Mexicano were a "stable and wise" investment, that Grass "had nothing to worry about" in investing in the accounts, and that the accounts were "fantastic" investments. Relying on those representations, Grass invested more money in and did not remove his funds from Credito Mexicano through August 1982. Grass asserts that the representations by Credito Mexicano's directors and agents concerning the security of the investment were made "in a reckless and negligent manner, not warranted by the information that Defendant then had concerning the subject matter of the representations and omissions and without regard to whether or not they were true." As a "proximate result of the misrepresentations," plaintiffs suffered a loss of principal and interest. Credito Mexicano has at no place in its voluminous pleadings contested the sufficiency of this cause of action under Texas law. *See generally* Restatement (Second) of Torts § 552; *Rosenthal v. Blum,* 529 S.W.2d 102, 104–05 (Tex. Civ.App.—Waco 1975, writ ref'd n.r.e.).

In order to state a cause of action for negligent misrepresentations, the plaintiff must allege that: (1) the defendant, in the course of his profession, supplied false information for the plaintiff's guidance in a business transaction; (2) the defendant failed to exercise reasonable care in gathering the information; (3) the plaintiff relied on the information in a transaction the defendant intended it to influence; and (4) the plaintiff thereby suffered pecuniary loss. *Id.* at 105. These elements are set forth in the complaint. Difficulties may arise for Grass in this case in proving that the representations (even if they were false and recklessly made) were the cause of his loss. But that would seem to be a matter of proof, not of pleading.

A few final words concerning the applicability of the act of state doctrine to the negligent misrepresentation count. The parties have paid virtually no attention to this count. Suffice it to say that, at this stage in the proceedings, Credito Mexicano has not shown how the currency control regulations are directly implicated by consideration of the claim. On this record, we are not convinced that adjudication of the claim would "involve reviewing the validity of the exchange control regulations," *Callejo,* 764 F.2d at 1125 n. 33. Rather, on its face this claim involves only an assertion that Credito Mexicano's agents, engaged in a commercial activity having effects in Texas, misrepresented these investments as safe in the months and years preceeding the government's currency decisions, when they should have known that the investments were not safe. The applicability of the act of state doctrine to this claim is not currently apparent. If on further development of the record, however, the validity of the currency control regulations is directly implicated, then the district court may wish to re-examine the applicability of the act of state doctrine. At this point, however, Credito Mexicano is not entitled to judgment on the negligent misrepresentation count.

### III.

For the foregoing reasons, we affirm the district court's entry of judgment in favor of Credito Mexicano on Counts 1, 2, 4, 5, 6 and 7 of the amended complaint. The entry of judgment on Count 3 is reversed, and this case is remanded to the district court for further proceedings not inconsistent with this opinion. Each side shall bear its own costs.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.